# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| KELLY SCHWAN<br>3361 Reston Drive<br>The Villages, Florida 32162 | )<br>)<br>)<br>) | CASE NO.<br><br>JUDGE: |
| Plaintiff, | )<br>) | |
| v. | )<br>)<br>) | **COMPLAINT FOR DAMAGES**<br>**AND INJUNCTIVE RELIEF** |
| VISITING NURSING HOSPICE AND<br>HEALTH CARE<br>100 Madison Avenue<br>Toledo, Ohio 43604 | )<br>)<br>)<br>)<br>) | **JURY DEMAND ENDORSED**<br>**HEREIN** |
| **SERVE ALSO:**<br>VISITING NURSING HOSPICE<br>AND HEALTH CARE<br>c/o Registered Agent<br>CT CORP SYSTEM<br>4400 East Commons Way, Suite 125<br>Columbus, Ohio 43219 | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | |
| Defendant. | ) | |

Plaintiff, Kelly Schwan, by and through undersigned counsel, as her Complaint against Defendant Visiting Nursing Hospice and Health Care states and avers the following:

## PARTIES AND VENUE

1. Schwan was a resident of Toledo, Lucas County, Ohio while employed by Defendant, and is currently a resident of the State of Florida.

2. At all times herein, Schwan was acting in the course and scope of her employment.

3. Defendant Visiting Nursing Hospice and Health Care is an Ohio non-profit corporation with its principal place of business at 100 Madison Avenue, Toledo, Lucas County, Ohio 43604.

4. Defendant does business under a variety of fictious names registered with the Ohio Secretary of State, including ProMedica Ebeid Hospice (Sylvania) (hereinafter "ProMedica").

5. Plaintiff worked at ProMedica in Sylvania, Lucas County, Ohio.

6. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Schwan is alleging a Federal Law Claim under the Family & Medical Leave Act ("FMLA"), 29 U.S.C § 2601 *et seq.*

7. All material events alleged in this Complaint occurred in Lucas County, Ohio.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## FACTS

9. Schwan began working for ProMedica in or around June 2015.

10. Schwan was employed by ProMedica as an inpatient social worker.

11. ProMedica was, at all times hereinafter mentioned, engaged in commerce or in an industry or activity affecting commerce and employed 50 or more employees for each working day during each of 20 or more calendar work weeks in the current or preceding calendar year and therefore is an employer as defined in 29 U.S.C § 2611(4).

12. On or about January 29, 2020, Schwan applied for FMLA leave.

13. Schwan applied for FMLA leave because she was having hip surgery.

14. Schwan's hip surgery was required due to arthritis and other issues with her hip.

15. Schwan's arthritis and hip surgery constituted a serious health condition within the meaning of the FMLA.

16. Schwan sought FMLA leave from May 1, 2020, until August 1, 2020, to have and recover from surgery.

17. On or around April 17, 2020, just two weeks prior to the start of her FMLA leave, Schwan was informed by Senior Administrator, Keryn Werdehoff, and Social Worker Supervisor, Jennifer

Wilson, that her job duties were changing to include on-call outpatient duties if the beds were less than half full, and COVID-19 consults on weekends and evenings.

18. The duties of similarly situated employees who had not sought FMLA leave were unchanged.

19. Werderhoff and Wilson reprimanded Schwan for taking FMLA leave.

20. Werderhoff and Wilson told Schwan that her FMLA leave "really wasn't working for [them]."

21. On or around July 30, 2020, just before returning from FMLA leave, Schwan sent a text to Resident Director Kate Hines asking for information related to her new job duties.

22. Instead of giving her any specifics about her new job duties, Hines told Schwan that by signing a sign-in sheet for the meeting, she had agreed to the new job duties and expectations, whatever they were.

23. Schwan was concerned about the lack of specifics regarding her new job duties.

24. Because of this concern, Schwan emailed human resources representative Colleen Alexander on or around July 31, 2020, and expressed her concerns.

25. Alexander called Kelly on or around August 3, 2020, and explained that ProMedica was entitled to change Kelly's job duties at any time.

26. Alexander told Schwan that if she was unwilling to accept this, she could speak to Richard Russell to try and get another job within ProMedica.

27. Schwan was reluctant to do so, because, in the past, she believed Russell had intentionally prevented her from obtaining other jobs within ProMedica.

28. Around the end of October 2020, Hines spoke with Schwan about moving to part-time work.

29. Schwan had no choice but to accept this change.

30. Schwan requested that, if she was going to be required to move to part time, she be permitted to work three days a week.

31. Despite this, Schwan was presented with a work schedule consisting of four hours per day, five days per week.

32. Schwan was informed that the schedule was Russell's idea.

33. In early November 2020, Schwan was placed on an outpatient rotation program.

34. Schwan received no training or instructions for the outpatient rotation program.

35. Schwan was not informed by her superiors about her placement.

36. Schwan found about the change in her job duties from a coworker.

37. Concerned about the change in job duties with no notice, on or around November 11, 2020, Schwan sent an email to the CEO and President of ProMedica Hospice, Randy Oostra, to report the situation.

38. Oostra responded to Schwan that "we'll look into it."

39. On or around December 2, 2020, Schwan had a meeting with Hines and HR Support Supervisor, Dana Vore.

40. During that meeting, Schwan was told she had three options moving forward: (1) work part time; (2) work full time with more work and no extra pay; or (3) be laid off.

41. Schwan was unwilling to work inconsistent hours, contrary to the schedule she had requested, without any training or instruction.

42. Schwan always had been willing to work full time, but she was being asked to work an additional twenty hours per week, with no health benefits, and no additional pay.

43. Schwan believed the alternatives presented to her were insulting and in retaliation for her having taken FMLA leave.

44. Schwan was presented with no choice. Schwan felt forced to choose a layoff.

45. On or around December 8, 2020, Schwan reached out to the Regional HR Manager, Mona Kirkland, to inquire about how to file a grievance.

46. Kirkland did not respond until on or around December 10, 2020.

47. At that time, Kirkland asked Schwan to tell her what was going on.

48. Schwan responded that she merely wanted to know the process for filing a grievance.

49. Schwan was not provided the information she requested.

50. On or about December 30, 2020, Schwan was forced to resign and was effectively constructively discharged.

51. Schwan's termination was an adverse employment action.

52. Schwan's termination was an adverse action.

53. ProMedica knowingly terminated Schwan's employment.

54. ProMedica intentionally terminated Schwan's employment.

55. ProMedica willfully terminated Schwan's employment.

56. ProMedica knowingly took an adverse employment action against Schwan.

57. ProMedica knowingly took an adverse action against Schwan.

58. ProMedica intentionally to an adverse employment action against Schwan.

59. ProMedica intentionally took an adverse action against Schwan.

60. ProMedica willfully took an adverse employment action against Schwan.

61. ProMedica willfully took an adverse action against Schwan.

62. On or about December 30, 2020, ProMedica terminated Schwan's employment because of her use of qualified FMLA leave.

63. On or about December 30, 2020, ProMedica terminated Schwan's employment in order to interfere with her ability to use qualified FMLA leave.

64. As a direct and proximate result of ProMedica's conduct, Schwan suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

### COUNT I: UNLAWFUL INTERFERENCE WITH FMLA RIGHTS

65. Schwan restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

66. Pursuant to 29 U.S.C. § 2601 *et seq.*, covered employers are required to provide employees job-protected unpaid leave for qualified medical and family situations.

67. ProMedica is a covered employer under FMLA.

68. During her employment, Schwan qualified for FMLA leave.

69. ProMedica changed Schwan's job duties without training or guidance to interfere with her exercise of FMLA rights.

70. ProMedica unlawfully interfered with Schwan's exercise of her rights under FMLA in violation of Section 105 of FMLA and section 825.220 of FMLA regulations.

71. As a direct and proximate result of ProMedica's conduct, Schwan is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorney's fees.

### COUNT II: RETALIATION IN VIOLATION OF FMLA

72. Schwan restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

73. During her employment, Schwan utilized FMLA leave.

74. After Schwan utilized her qualified FMLA leave, ProMedica retaliated against her.

75. ProMedica retaliated against Schwan by changing her job duties without instruction or training.

76. ProMedica retaliated against Schwan by giving her an ultimatum of taking a layoff or being subjected to unreasonable requirements.

77. ProMedica retaliated against Schwan by constructively terminating her employment.

78. ProMedica willfully retaliated against Schwan in violation of 29 U.S.C. § 2615(a).

79. As a direct and proximate result of ProMedica's wrongful conduct, Schwan is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorney's fees.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff Schwan respectfully requests that this Honorable Court grant the following relief:

(a) Issue a permanent injunction:

- (i) Requiring Defendant to abolish discrimination, harassment, and retaliation;
- (ii) Requiring allocation of significant funding and trained staff to implement all changes within two years;
- (iii) Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to investigate complaints promptly and/or take effective action to stop and deter prohibited personnel practices against employees;
- (iv) Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and
- (v) Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

(b) Issue an order requiring Defendant to restore Schwan to one of the positions to which she was entitled by virtue of her application and qualifications, and expunge her personnel file of all negative documentation;

(c) An award against Defendant of compensatory and monetary damages to compensate Schwan for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(d) An award of punitive damages against Defendant in an amount in excess of $25,000;

(e) An award of reasonable attorneys' fees and non-taxable costs for Schwan's claims as allowable under law;

(f) An award of the taxable costs of this action; and

(g) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

*/s/ Sean Costello*_____
Sean Costello (0068612)
Trisha Breedlove (0095852)
**THE SPITZ LAW FIRM, LLC**
1103 Schrock Road, Suite 307
Columbus, Ohio 43229
Phone: (216) 291-4744
Fax:    (216) 291-5744
Email: sean.costello@spitzlawfirm.com
Email: trisha.breedlove@spitzlawfirm.com
*Attorneys for Plaintiff Kelly Schwan*

## JURY DEMAND

Plaintiff Schwan demands a trial by jury by the maximum number of jurors permitted.

*/s/ Sean Costello*_____
Sean Costello (0068612)
Trisha Breedlove (0095852)